No. 24,614.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, *Plaintiff,* v. C. R. TEETERS, as Sheriff of Sherman County, *Defendant.*

SYLLABUS BY THE COURT.

OUSTER—*Sheriff—Misconduct in Enforcement of Prohibitory Law.* The evidence shows that judgment of ouster should be rendered against the defendant because of his misconduct in the enforcement of the prohibitory liquor laws of this state.

Original proceeding in quo warranto. Opinion filed October 16, 1922. Judgment of ouster.

*Richard J. Hopkins,* attorney-general, *Dennis Madden, W. C. Ralston, C. B. Randall,* assistant attorneys-general, and *Frank J. Horton,* county attorney, for the plaintiff.

*J. E. Addington,* and *Frank Doster,* both of Topeka, for the defendant.

The opinion of the court was delivered by

MARSHALL, J.: The petition charges that the defendant willfully neglected to perform his duty in the enforcement of the prohibitory liquor laws of this state; that he was intoxicated in a public place; and that he willfully neglected to perform his duty in keeping the peace during the recent strike of railroad shopmen. The petition asks that the defendant be removed from the office of sheriff of Sherman county.

The evidence has been taken by deposition. Affidavits have been filed, but they are not considered. The depositions show, and the court finds, that the defendant willfully neglected to take proper steps to enforce the prohibitory liquor laws of this state in his county; that he had knowledge that one John Saathoff, a resident of Sherman county, was operating a still for the manufacture of intoxicating liquors and was selling such liquors in that county; that

the defendant, in substance, told Saathoff that the defendant knew what business Saathoff was engaged in and would not molest him, but that he should look out for the federal officers; that those officers moved against Saathoff; and that the defendant learned of the proposed action of those officers and, before the officers arrived at Saathoff's place, notified Saathoff to clean up his premises. There is evidence which tends to show that the reason given by the sheriff for his lack of activity in the enforcement of the prohibitory liquor laws was that he received no extra compensation for his services in that regard while the county attorney received $25 for each conviction.

The evidence does not establish that the defendant was intoxicated in a public place, although there is evidence which tends to prove that he was.

The court finds that during the recent strike of railroad shopmen the attitude of the defendant was antagonistic, or indifferent to the enforcement of the laws for the preservation of the peace and to the enforcement of chapter 29 of the Laws of 1920, the court of industrial relations act. The evidence does not prove that during that strike the defendant was guilty of any act that he should not have done, nor that he failed to do anything that he should have done.' The evidence does establish that the attitude of the defendant was one out of which it might reasonably be expected that riots and violence would occur. The evidence shows that in response to an inquiry by the governor, the defendant replied that he could take care of the situation in his county and that assistance from the state through the national guard was unnecessary; that violence, arising out of the strike, did occur in that county on two separate occasions—once, on the night of August 19, 1922, when the sleeping quarters of the men working in the Chicago, Rock Island & Pacific railroad shops at Goodland were fired on, some twenty or thirty shots being fired from guns of different caliber; that the defendant stated he believed the shots were fired by those who were working in the shops and who had gone outside for the purpose of doing the shooting; that workmen from the shops could not freely go on the streets of Goodland; that a man who was providing food for the men working in the shops was assaulted by a number of persons on the streets of Goodland; that when the person who was assaulted reported the matter to the defendant, the attitude of the latter was one of indifference; and that the defendant appointed two strikers as

deputy sheriffs, although they were promptly removed at the suggestion of the governor.

### Section 7603 of the General Statutes of 1915, in part, reads:

"Every person holding any office of trust or profit, under and by virtue of any of the laws of the state of Kansas, either state, district, county, township or city office, who shall willfully misconduct himself in office, or who shall willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state of Kansas, . . . shall forfeit his office, and shall be ousted from such office in the manner hereinafter provided."

### Section 5505 of the General Statutes of 1915, in part, reads:

"It shall be the duty of all sheriffs, deputy sheriffs, constables, mayors, marshals, police judges, and police officers of any city or town having notice or knowledge of any violation of the provisions of this act, to notify the county attorney of the fact of such violation, and to furnish him the names of any witnesses within his knowledge by whom such violation can be proven. . . . For a failure or neglect of official duty in the enforcement of this act, any of the city or county officers herein referred to may be removed by civil action."

### Section 6 of chapter 29 of the Laws of 1920, reads:

"It is hereby declared and determined to be necessary for the public peace, health and general welfare of the people of this state that the industries, employments, public utilities and common carriers herein specified shall be operated with reasonable continuity and efficiency in order that the people of this state may live in peace and security, and be supplied with the necessaries of life. No person, firm, corporation, or association of persons shall in any manner or to any extent, willfully hinder, delay, limit or suspend such continuous and efficient operation for the purpose of evading the purpose and intent of the provisions of this act; nor shall any person, firm, corporation, or association of persons do any act or neglect or refuse to perform any duty herein enjoined with the intent to hinder, delay, limit, or suspend such continuous and efficient operation as aforesaid, except under the terms and conditions provided by this act."

### Section 17 of that act is as follows:

"It shall be unlawful for any person, firm, or corporation, or for any association of persons, to do or perform any act forbidden, or to fail or refuse to perform any act or duty enjoined by the provisions of this act, or to conspire or confederate with others to do or perform any act forbidden, or to fail or refuse to perform any act or duty enjoined by the provisions of this act, or to induce or intimidate any person, firm, or corporation engaged in any of said industries, employments, utilities or common carriers to do any act forbidden, or to fail or refuse to perform any act or duty enjoined by the provisions of this act, for the purpose or with the intent to hinder, delay, limit, or suspend the operation of any of the industries, employments, utilities or common carriers herein specified or indicated, or to delay, limit, or suspend the production or transportation of the products of such industries, or employments, or the

Petroleum Co. v. Gas & Fuel Co.

service of such utilities or common carriers: *Provided,* That nothing in this act shall be construed as restricting the right of any individual employee engaged in the operation of any such industry, employment, public utility, or common carrier to quit his employment at any time, but it shall be unlawful for any such individual, employee or other person to conspire with other persons to quit their employment or to induce other persons to quit their employment for the purpose of hindering, delaying, interfering with, or suspending the operation of any of the industries, employments, public utilities, or common carriers governed by the provisions of this act, or for any person to engage in what is known as 'picketing,' or to intimidate by threats, abuse, or in any other manner, any person or persons with intent to induce such person or persons to quit such employment, or for the purpose of deterring or preventing any other person or persons from accepting employment or from remaining in the employ of any of the industries, employments, public utilities, or common carriers governed by the provisions of this act."

A sheriff cannot be ousted and probably should not be censured on account of his sympathy for the strikers in the recent strike, but that does not excuse him for taking an attitude antagonistic or indifferent to the enforcement of the law. The state has not proved any positive act, nor the failure to do anything, connected with the strike, for which the defendant can be ousted from the office of sheriff.

Because of the positive neglect of the defendant to enforce the prohibitory liquor laws of this state and because of his active misconduct in connection with those laws, judgment of ouster is entered against him, and he is removed from the office of sheriff of Sherman county.